Bueso v. Attorney General 25-1989 John Pang with the Georgetown University Law Center's Appellate Litigation Clinic With the court's permission, law graduate Alicia Berry will present arguments on petitioner's behalf. We'll be happy to hear her. Welcome, and you can proceed whenever you like. Would you like to reserve some time? Good morning. Yes, thank you, Your Honor. With the court's permission, I'd like to reserve three minutes for rebuttal. That'll be granted. Okay. Mr. Linus Bueso appeared pro se before an immigration judge in October of 2024 to request relief from removal after trying to no avail to obtain counsel. But the IJ's failure to discharge his duty precluded Mr. Linus Bueso's presentation of a fully developed withholding of removal claim. The resulting dismissal of Mr. Linus Bueso's claim by a misapplication of matter of WIC requires remand. Ms. Berry, the question I have kind of underlines the whole case for me is the PSG. How would your client establish immutability if we were to send it back? Your Honor, immutability for former employment has been recognized in cases, for example, SRL, where the individual applicant was a former police officer. And so I think what hinges there is the former piece of the employment, the fact that it has ended. But whatever stigma or associations that come with that employment carry on. The duty for the IJ here to develop the record as to particular social groups flows from statutory requirements. This also want us to go with Quintana, right? Fourth Circuit case? Yes, Your Honor. We believe that Quintero is sort of the best articulation of what the duty requires. And so just to provide the court with that quote here, Quintero said that IJs should explore for, probe into, and elicit all facts relevant to the applicant's claim, or at a minimum, explain in plain language what a PSG is, the three elements of cognizability, what types of evidence may be potentially relevant to the applicant's claim, and how the applicant may prove his or her eligibility for relief. So here the IJ did inform Mr. Linus Bueso what types of evidence he may present, but the IJ did not explain what a PSG is or how it is established. So he never told Mr. Linus Bueso what those three elements of cognizability are from matter of MEVG. As Your Honor, Judge Restrepo noted, those are immutability firstly, but also social distinction and particularity. So what that might look like in practice is the IJ saying to Mr. Linus Bueso, one of the ways you may establish eligibility for either asylum or withholding of relief is by proffering a PSG, a particular social group. That requires immutability, social distinction, and particularity. But is employment on a cruise ship really an immutable characteristic? So Your Honor, I think here what matters is that it was former. And so in both of the instances where, the first two instances where Mr. Linus Bueso was assaulted, it was after his return from a cruise ship contract. So the contract at that time had ended. And so that's the key there is that whatever, again, associations may carry with that former employment for Honduras. And frankly, we don't know because the IJ didn't ask those questions. You pointed us to one case, the police officer case, to establish that former employment might be recognized PSG. Can you tell us if there are any other cases that apply that in other contexts, other former employment? There are, Your Honor. I don't have the names of those cases in front of me right now. I've seen it for soldiers. I believe there was a case out of the BIA where it was a unionized taxi driver. So there are other cases, and I'd be happy to provide the court with further information on that in supplemental briefing if that would be helpful. How deep a dive should the IJ take when he's explaining these things to the petitioner? So at a minimum, what the IJ should have done, having recognized that Mr. Linus Bueso was proffering a claim based on a particular social group, the IJ should have explained those three requirements, immutability, social distinction, and particularity, and asked Mr. Linus Bueso, what is the PSG that you're intending to proffer? Should he have defined immutability? Not everybody, particularly a pro se litigant, probably doesn't speak English, would understand what that means. Right, Your Honor. Mr. Linus Bueso was, you know, acting through an interpreter here. But I think a simple explanation for immutability would just be that means your group cannot be changed. For social distinction, it would be that means your society recognizes the group as a group. For particularity, it might be there are defined boundaries such that, you know, by talking to someone, you know whether they are or are not part of this group. So I think those three simple sentences could have gone a long way for Mr. Linus Bueso, knowing what the facts were that would have mattered for cognizability here. Of course, there was, as your adversary points out, the judge asked like 160 plus questions. In terms of Quintaro, and I'm not pronouncing it as you do, but I mean, I noticed that other courts have not really adopted it. Does it, and it's obviously not binding on us, but something for us to consider. I mean, does it put too much of a burden on an IJ to come up with this stuff and try to, I mean, are we pushing too much toward having an administrative judge, an immigration judge become actually a lawyer in the case? Tell us about that. Sure, Your Honor. IJs are certainly asked to do a lot, but adding that simple explanation would not be asking them to do much more. And I think the fact that Quintaro came out in 2021 in the Fourth Circuit just recently and Diane affirmed that holding. So I think that tells us that there haven't been issues with what that ruling was, that it was administrable, that courts are dealing with it, IJs are dealing with it, and it hasn't substantially changed the way that proceedings are happening. But other courts of appeals have not adopted it, right? Not that same rule in that context, Your Honor. But many courts of appeals do have the duty to develop the record, including, as you know, this court in Torre held that IJs do have a duty to develop the record as to dispositive issues. Is there a circuit that's come close to adopting the Fourth Circuit's position? I don't believe there's any particularly on PSGs, Your Honor. If Your Honors have any further questions on duty, I'm happy to address those. I'd also like to move to the matter of WIC arguments.  So even regardless of the IJs' duty here, matter of WIC does not appropriately resolve this case because the rule announced there should not apply to pro se. Right. I had a question on that one, too. I can't really find a case, maybe you can, that in our circuit, which reached the holding which you would like us to find, which is WIC doesn't apply to pro se individuals. What support is there for that? So there's not a case in the circuit, Your Honor. But the reasoning of matter of WIC doesn't apply to pro se non-citizens in the same way it does to counseled citizens. So that case talked at length about how the adversarial system of the immigration court matters and that counsel is expected to proffer a distinct PSG that is exactly delineated with the three cognizability elements. But it's just not reasonable to expect that of a pro se non-citizen who is often detained, often doesn't speak the language, often has no legal training at all, let alone in this country. And so just as a matter of reasoning, it's not sound there. But additionally, the court, the BIA, provided no explanation for why matter of WIC should apply. And we see that as an issue here because Mr. Linus Boyceau did introduce many facts before the IJ that connected his persecution to his former employment as a former Honduran crew member of an American cruise company. So without the BIA having told us it is for X, Y, Z reason that matter of WIC still applies, despite all of that factual introduction, we can't know what that rule looks like in practice and when someone should or should not expect their PSG to be considered preserved after their hearing. I want to ask you a question about the on account of element of withholding of removal. Why, in your view, is that an entirely factual question? Your Honor, because the motive that underlies the nexus question is a factual question. And so in the cases INS versus Elias Zacharias, and then also in the Tupan Lopez case out of the circuit, it has been held that motive is a factual question reviewed for substantial evidence. What about the Supreme Court's recent Urias versus Bondi case? Why doesn't that suggest it's a mixed question? Your Honor, I believe that's distinct because whether something arises to the level of a nexus legally is separate from the question of why someone was targeted for a particular reason. And so motive as part of nexus is the factual question, and that's really what we're getting at here. And then whether that is on account of is a legal question that's, I think, distinct. Okay, well, assume I go with you on that. Can you identify the facts that the BIA found as opposed to applying the facts that the IJ found? Absolutely, Your Honor. So the IJ, in his opinion, said, this is from page 98 of the administrative record, his claim of past harm is based on assaults and robberies due to a perception that he had money after working abroad. That statement was made in the context of the IJ identifying PSGs that Mr. Linus Boyce may be putting forth. Rather than in the context of a nexus. And so what the IJ may have done would have been saying, for example, Mr. Linus Boyce was only targeted because he had money or was not targeted because he worked formally for a cruise ship. But there's not exact language that needed to be used. But it would have had to be a more clear statement of whether or not Mr. Linus Boyce was targeted for any other reason. Essentially because where it shows up in the opinion? Yes, Your Honor. I think the the key point there is that the protected grounds has to be established and considered by the IJ before the IJ can consider whether those protected grounds are the reason for the targeting. And I think Serrano Alberto does a good job of explaining that in footnote. I believe it's five, but I could I could be misspeaking there. Explaining how it's important to identify the grounds prior to the nexus determination. And just to close that loop, the BIA's finding, back to your question, Judge Montgomery Reeves, is in error because the regulation says that the BIA cannot make fact findings in the first instance. And the BIA went ahead and did explicitly make a nexus finding. I don't have that language before me, but I'd be happy to find you the exact quote from the AR if that would be helpful. Finally, I see my time's running low, but if I could just briefly address the Kat claim as well. Here, the IJ considered only a single source of torture without considering more broadly what Mr. Linus Boyce was likely to be subject to if returned to Honduras. Miri requires first that the IJ sort of make that broad determination. What would happen to the applicant if returned before considering whether it amounts to torture? Why isn't the IJ's determination that what's most likely to happen is what already happened? Why is that? And why is that an error that we can consider? Your Honor, because the IJ there was ignoring evidence of other potential treatment. The IJ says I've considered all the evidence and I determined that what is most likely to happen is what has happened in the past. Why is it that consideration of the evidence and just rejection of the theory of additional potential torture? Your Honor, I think here we don't see what the IJ said as adequately dealing with the potential other sources. I'm not sure if this is addressing your question appropriately, but I think there the issue is that Mr. Linus Boyce introduced evidence of other deaths that were possible ways that torture may result. And the IJ didn't seriously deal with those concerns. Were those other deaths tethered to some sort of government acquiescence or torture sponsor? Your Honor, the IJ actually explicitly said that they would not reach that point. And so the BIA is reaching that point is also in error under the regulation against fact finding. As far as whether acquiescence can be established here, I think that would require further fact finding beyond what's in the record at this stage. I see my time has expired. Thank you, counsel. We'll hear from you on rebuttal and we'll hear from your friend. Thank you, Your Honors. Good morning. May it please the court. Alexa Perlmutter for the attorney general. The court should deny this petition for review because the immigration judge facilitated a full and fair hearing for petitioner and the denial of his claims is supported by substantial evidence. The immigration judge satisfied all statutory and regulatory requirements, thoroughly probed the facts of petitioner's claim in a lengthy hearing and found based on those facts that he was targeted on a perception of wealth. The IJ then denied the claim because an alien who is targeted solely for money is not targeted on account of a protected ground. That petitioner later through counsel believes he may be a member of a particular social group does not mean that he was deprived of a full and fair hearing. Indeed, there's many particular social groups that could underlie this record. Family members of people who were killed by gangs, young men, men in opposition to gangs. The question really is, was petitioner deprived of the opportunity to present the facts of his case? And if not, was he prejudiced? This court has identified a spectrum of conduct by immigration judges. On the one hand, this court has identified charm where the immigration judge berated, bullied, belittled petitioner, did not let him submit evidence of his family's grants of asylum and insulted him. The court found that that was a violation of due process. On the other hand, you have Abdul Rahman, where the immigration judge, what the court says, exceeded the bounds of professionalism or propriety, made kind of broad extrapolations from the facts, made some assumptions about the country of removal. And the court said, you know, this does not rise to the level of a due process violation. What we have in this case is an immigration judge who really went above and beyond. There were no particular grounds. There were no protected grounds proffered. The immigration judge suggested ones that would have underlied his claim and found that they were not cognizable. But should the IJ have informed the petitioner of the three PSGs he was going to consider before he rendered his opinion? So petitioner, that's certainly not a requirement. It's petitioner's burden to meet the eligibility requirements. The immigration judge two times prior to the hearing gave the statutory standard for eligibility. The regulations that Congress empowered the attorney general to create these regulations to govern the immigration judge's conduct. Those regulations do not state that the immigration judges have an obligation to state those requirements. What about our case law, though? Your case law also does not state that this this court has specifically found that there's no affirmative duty to develop the record. I did not find a case where, you know, mentioning the three elements of the particular social group is necessary. What this court has found in unpublished cases and in cases kind of assuming. Well, I'm not I'm not I didn't suggest that. I'm just saying just generally should the IJ have said here are the three PSGs I'm considering. I don't think the immigration judge had an obligation to do that because what the immigration judge did here is made a factual finding of motive. The immigration judge said you have been targeted based on due to a perception that he had money. Once the immigration judge, after thoroughly probing the facts, made that motive determination, he then suggested possible protected grounds that he would have been able to satisfy the nexus requirement. So to your honor's questions about whether petitioners proffered social group now is cognizable, that's really beside the point. And even if it was, couldn't show prejudice if there's no nexus to that group and there is no nexus to the group. Petitioner does not contest or engage with any of this court's nexus law where an alien who's targeted for because the gang members think he has money. It's immaterial where he earned that money. We have Thylon, we have Gonzalo. Sorry, I'm blanking on it. Gonzalo Postadas, I believe the case is where really a means to an end is not what we're looking for. We're looking for the motive of what the gang members were thinking. We have here petitioner testifying, you know, 159th the record. The final attack was simply because he was in the United States and they thought he had money. The gang members were only asking, where's your money? Where's your money? He said, when you work anywhere making dollars, that's what's dangerous. So the immigration judge, after probing those facts at length, made that motive finding. And in any event, the board ameliorated any possibility of prejudice as to the PSG because it did not apply the holding of matter of WIC. It did cite that case, but then it went on to consider the the new group that petitioner through counsel proffered at that stage and reasonably applied the established facts. The facts not only found by the immigration, of course, are dealing with a pro se case here. Right. This case is a pro se case, right? Well, he had counsel before the board council before the argument and raised this exact social group that petitioner is raising now and saying. But yet in making the argument said he was targeted because they believed he had money after working abroad. That petitioner before, you know, petitioner's counsel before the board did not have a full understanding of this court's nexus law. I mean, the board took petitioner's counsel at their word to say he was targeted because he had money, applied those established facts. The fact that petitioner's counsel now is manufacturing a factual dispute does not mean that one existed before the board. Can you address specifically your friends on the other side argue that the board in a number of instances engaged in improper fact finding? Can you address those statements, those allegations? So as to the Kat claim, you know, the Kat claim can be fully resolved on the likelihood of torture. It does seem like the immigration judge did not reach the acquiescence prong. And so the board's decision in that regard is not proper. We didn't defend that aspect of the decision. But with regard to the particular social group, the immigration judge made a motive finding. That motive finding was repeated by petitioner's counsel in the administrative brief, pages 12, 15 and 16. The board could then apply that motive to the new social group and say the motive is money. There is no nexus. It is not on account of his social group because how he got that money is simply incidental, tangential. It doesn't meet the motive requirement. And so as Justice Jackson recognized in Urias-Oriana, these are mixed questions. And the fact that 1252b4b does not grant courts of appeals the ability to review them as mixed questions does not mean the board cannot. And this court has recognized that in the Hong decision, I believe it was, in the context of well-founded fear. This court recognized it in the remand for Wilkinson. You know, the Supreme Court found that that was a mixed question. On remand, this court found that the entirety is reviewed for substantial evidence, notwithstanding that this court has long instructed the board to apply the facts to the EUH standard de novo. So, you know, the Ninth Circuit has held, the First Circuit has held, the Fourth Circuit has recognized in Crispin Valladares footnote seven that this is the legal nexus standard is a question that the board can resolve de novo as long as it is applying established facts. Let me take you back to the IJ hearing. We have an individual who doesn't speak English and is appearing pro se. Why should we not adopt the Fourth Circuit's Quintero rationale? So I believe it has to do with what, I mean, where are we getting these requirements? Are we getting them from the INA? The INA instructs the immigration judge to, I think, reasonably delve into the facts of the claim. In this case, this hearing begins with the individual saying he's pro se. He can't afford one attorney and couldn't find one pro bono. The IJ just simply tells him, well, you can represent yourself. Let me just finish. He doesn't explain any of his due process rights. Well, the immigration judge at the initial hearing advised petitioner of his opportunity to obtain counsel and then gave him the opportunity to obtain counsel, continued the hearing. So he did, he was provided that opportunity. There's no Sixth Amendment right to counsel in immigration proceedings. Once an alien does not come to court with counsel, he was detained. The immigration judge has an obligation to move along with the hearing at that point. The immigration judge then, in a lengthy discussion on pages 126 to 128, instructs him in detail what types of evidence can be used to prove your claim. The immigration judge mentioned country reports, mentioned police reports, mentioned statements from family and friends. The immigration judge explained to him, even if you can't get this evidence, you're going to have the opportunity to explain why you can't get it. When he then came to the hearing with evidence that wasn't properly filed, the immigration judge admitted it. The immigration judge twice told him the statutory standard for relief. And the immigration judge fulfilled all of the statutory obligations passed by Congress, all the regulatory obligations that the attorney general has passed. And ultimately, his hearing was full and fair. And once we get into the full and fair hearing, we have to show prejudice. And there's no prejudice in this case when the facts of his claim reasonably show that the gang members targeted him for money. Well, can we just hop it off of Judge Restrepo's question? I mean, we've got, there's going to be some line drawing here, right? We've got our Torrey case, which you're familiar with, I know. And we've got this Contaro case out of the Fourth Circuit. You know, there's some duty under Torrey, right? Are you telling us that we were wrong in Torrey? No, certainly not. I think the duty for the immigration judge is to develop the facts of the claim. Not to develop the legal theories and not to kind of go farther and see what may lurk in the record as a potential theory if it's disconnected from the facts of the claim. To the extent that petitioners read Quintero to require that, you know, no court has held that. And even the Fourth Circuit has walked that back in tapas, saying once the immigration judge finds that the alien has not put forth a factual basis for the claim, the immigration judge's duty at that point ends. Didn't the I.J. here come up with three PSGs? Yes, the I.J. certainly discharged any duty, you know, more than that. And I think that he got those three PSGs because he made a motive finding. And he goes, okay, this is the motive I'm finding. As a matter of fact, here's the motive. What possible grounds could underlie this motive if we're going to consider this claim forward? So I think the immigration judge here, you know, went above and beyond in trying to kind of give this claim a thorough shake. So can you enunciate a rule for us? All right. If we, you know, if we write on it, we're going to have to resolve this case. Maybe we'll talk about this a little. I don't know. I think the rule is ultimately this is very fact specific. And once the immigration judge, you know, the immigration judge can deny a claim on any grounds that the immigration judge recognizes. And once the immigration judge has sufficiently developed the facts such that, you know, the alien does not have a claim for relief. I think at that point, it's really about the factual development. The immigration judge has a duty to develop the facts of the claim to give the alien an opportunity to present the facts of the claim, to present evidence, to make arguments on his behalf. But once those facts have all been brought out, and here they certainly were. You mentioned the lengthy, you know, nature of the hearing. The facts have been brought out. At that point, the immigration judge needs to look at those facts to resolve the claim. And however he does that, you know, is in the immigration judge's prerogative. But I think once you have an adequate factual development and there's no question here, we have an adequate factual development of the claim, the reasons why he fears harm, all of the harm that he fears. And after that, it's really how does the immigration judge want to want to dispense with the claim? So what's wrong with Quintero then? To the extent that petitioners read Quintero to require the immigration judge to propose any number of potential social groups that are then untethered to a nexus. I mean, what would be the point of that? It gets to the process does not exist for its own sake. You know, process exists, and that's why we have a prejudice requirement. And that's why the touchstone is whether the hearing is full and fair. I think for this court to go as far as Quintero, again, I don't think Quintero really goes that far. But if this court were to take it that far, it really would have to reconcile the spectrum that it laid out, where an immigration judge who exceeds the grounds of propriety, exceeds professionalism, is rude to a petitioner, doesn't allow a petitioner to kind of make the inferences that the petitioner wants to make. And that's OK. But yet over here, an immigration judge doesn't suggest a wide variety of social groups for the sake of suggesting multiple protected grounds. I think ultimately this case is resolved by looking to the Hernandez-Germendia decision from 2022 of this court, where it's very similar on both grounds. So there the alien testified that his uncle was harmed. Other family members were harmed. He was pro se. The immigration judge simply found, I don't see any protected grounds here. Personal dispute. I don't see anything. What the board did, similar to the board here, I'm not sure what arguments were made on appeal, but what the board said is, OK, let's assume a family-based claim. Applying the facts found by the immigration judge, still no nexus there. He appealed to this court. This court affirmed the board's no-nexus finding, implicitly suggesting that the board can do this de novo application of facts. And then the alien said that the immigration judge erred by not proffering social groups. And this court said no. The immigration judge asked why he was harmed, asked about the nature of the harm, and that properly discharged his duty to develop the facts. And so to the extent that Hernandez-Germendia didn't announce a rule, I think the rule is baked implicit into that case, and it's a published case. And so I'd urge the court to look at that case. I'd urge the court to look at the unpublished case Quintilla, I believe it is. Yeah, Quintilla, Quintilla, where, again, the alien said he was harmed because he was a young man and he was a ripe age for the gangs to recruit. And what the immigration judge did is construed the claim of victims of recruitment. And on appeal, he argued, no, I was announcing an age-based social group, similar to here, employment-based social group. And the court said, no, it was reasonable for the immigration judge to look at the social group more broadly. It was reasonable for him to do that. And also there's no prejudice because there would be no nexus to the age-based social group. The gang members didn't care about his age. He was generally being recruited. And here he was generally being targeted for money, as unfortunate as that is. But it doesn't have a nexus to how he got that money, really. And so I think to just mention a couple things that— How about the WYC case? That's something your friend talked about. Right. I mean, I think that that is not properly before the court because the board did not use matter of WYC to dispense of this claim. The board could have said, cited matter of WYC, we're not considering the group. End of story. I think in that case, we would really have to unpack, is it full unfair for that to be applied to a pro se alien? But because that didn't happen here, I think under Chenery, we have to kind of go with what did the board actually do? And what the board actually did is apply established facts to the claim. And I'd like to address Petitioner's 28J letter of the Dion case. I think that case is a good corollary here. I mean, again, the Fourth Circuit applied its own binding law to the extent that that's relevant here. That case, the petitioner was not told he needed to provide any objective evidence. Here, again, pages 126 to 128, this petitioner was. He was never told where to submit the evidence, and he submitted it to the wrong court, and it never made it into the record. Here, Petitioner submitted all the evidence he wanted. The immigration judge accepted evidence that was not timely filed. And here, in Dion, the petitioner was not told the statutory legal standard. Here, Petitioner was told the statutory legal standard two times. So, you know, Dion, again, repeats the Fourth Circuit's binding case law, but those facts are dramatically different than this case. And I think it just shows that this is a sliding spectrum. This is fact intensive. And we have to really look at what happened here, and what happened here is the petitioner got a full and fair hearing. I'd briefly like to address the footnote. You're out of time, so. Okay, well, I'll just wrap up to say, you know, petitioners, the denial of his applications is supported by substantial evidence. Thank you. Thank you, counsel. And we'll hear from your adversary. Thank you, Your Honors. Three brief points on rebuttal here. Firstly, with my friend's contention that the immigration judge's asking questions, any number of questions, was adequate because there were many questions. The issue that we pose here is that the IJ asked no substantive questions about the group that Mr. Lina's voice was proffering. That's different than the Hernandez-Garmendia case. Your friends say it doesn't matter what the group is because the motive was money. And if the motive is money, that's not sufficient. They say, your friends on the other side say, I can sit here and come up with three or four additional groups that nobody proffered. But you should focus on the motive because the motive was money. It didn't matter where the money came from. The end. Can you respond to that? Yes, Your Honor. Firstly, we don't read the IJ as making a motive finding, as we discussed already. But secondly, even if so, the IJ was ignoring Mr. Lina's voice's repeated introduction into the record of his claim that he was targeted because of his employment. So, for example, at administrative record page 171, Mr. Lina's voice says, they told me the MS gang people that every time I went into a cruise ship, they always told me I was going to have to help the gangs. So he's not talking about money there. He's talking about his employment, which which is distinct. Let me ask you this question. There was a period when he wasn't employed, correct? Yes, Your Honor. And he wasn't targeted during that period, correct? Not that's in the record, Your Honor. OK. However, the temporal connection is important. And so the fact that he was targeted temporally twice just after he returned from those employment contracts does matter. I don't have that case before me, but I'd be happy to provide it if Your Honors would like that and supplemental briefing that there there is it is a weighty mode of consideration when there is a temporal connection between whatever the group is, whatever the protected grounds is and the targeting on on this being a heavy burden for the IJs. The Quintero amicus brief that was submitted by former IJs said that this is something that normally happens, that they typically liberally construe pro se non-citizens claims, that they provide them with explanations. And to my friend's point that an explanation was provided. Of course, the IJ did say, you know, religion, race, protected PSG. These are all ways that you can establish your asylum or withholding of removal claim. And we all understand what race, religion, those categories are. But we don't understand what PSG is without an explanation. And that's what Mr. Linus was so was lacking. He wasn't able to introduce those facts because he didn't even know what facts mattered without that explanation. And that's what would have made the difference here. When we're talking about prejudice, this court in Leslie said that no prejudice is required when a regulation is grounded in a constitutional or statutory protection. So we have that. Additionally, in B.C., this court said that there was presumptive prejudice when it's sort of this due process color type of violation that happens. And so we have that as well. And the Quintero court explains that at length. I did have two additional points, but I see them over time. We gave your friend a couple of extra, another minute. So we'll give you another minute. Thank you, Your Honor. Just briefly on WIC, it's very clear that the BIA did apply WIC. Of course, there's the matter of whether the nexus finding was appropriate. But just to point the court to page four of the A.R. The BIA says it, Mr. Lina's voice did not present the PSG of former Honduran crew members of American cruise companies to the immigration judge. And it indicated that it, quote, will not consider a new PSG formulation presented for the first time on appeal. And that's citing the matter of WIC. That feels like a pretty explicit application of the case. And then just lastly, on the cat point, the fact that the I.J. was considering what is most likely to happen doesn't mean he thought broadly what is possible to happen, what is likely to happen. So even if it's not the most likely outcome that Mr. Lina's voice might be tortured, that that matters here, that he looked at those facts and considered it. All right. Thank you. Thank you, counsel. We thank all counsel for their excellent briefing and oral argument today. In particular, thank you to the Georgetown University Law Center Appellate Litigation Program for taking this on. We're grateful. And if counsel is amenable, we'd like to greet you at sidebar to thank you.